Mr. Chief Justice Shaukey
delivered the opinion of the court.
The foundation of this proceeding was upon a suit atlaw, instituted by Hezekiah Harrington, as executor of the last will and testament of Sarah B. Bradford, against Jephthah Harrington, for the recovery of certain negroes, as' a part of the estate. As a bar to the action, the defendant set up a deed of gift for the negroes in question, made by Sarah B. Bradford in her lifetime. By the courts of law, the instrument under which he claimed was decided to be a testamentary writing, and not a deed of gift, and the plaintiff interposed a subsequent will, by which the previous one was revoked, and succeeded in recovering the negroes. An execution was sued out to enforce the judgment, and for the coming bond given and forfeited, and another execution issued, and the defendant then filed this bill to enjoin the proceedings at law, and for reforming the testamentary writing, alleging that it was intended as a deed of gift, but was made a will by the error, mistake, and unskilfulness of the draftsman.' By this instrument, property was given to Jephthah Harrington, Gabriel Harrington, and John Harrington, and the bill is preferred in the name of Jephthah Harrington in his own right, and as administrator of Gabriel Harrington, who *716 has since died, and John Harrington, against Hezekiah Harrington, Francis Cates, William Y. Cates, Mary Jackson Harrington, and William Harrington, who are legatees under the last will. The answers deny the execution of the first instrument as a deed of gift, and require full proof. To show that Mrs. Bradford intended this instrument as a deed of gift, and the mistake of the draftsman, the complainants, at the hearing, introduced and relied on depositions which were taken in the suit at law between Hezekiah Harrington, executor, and Jephthah Harrington, to the admission of which, the respondents objected, but they were received by the chancellor, and a decree for reforming the instrument, and that the respondent be perpetually enjoined, &c., was rendered, and this appeal taken.
These depositions being the only evidence in support of the allegations of the bill, naturally present to the court the first questions for adjudication. The counsel for the appellants have raised two objectionsto them. First, thatthey are inadmissible as evidence between the parties to the bill; and secondly, that even if they were properly received, yet it is insisted, that they are not sufficient to establish the alleged mistake, and to justify a reform of the instrument.
The rule for allowing depositions taken in one cause to be read in another, seems to derive its support from necessity rather than principle, and is justly subject to several restrictions. The following may be considered as the usual tests by which the admissibility of such testimony is to be determined. First, the parties must be the same, or in privity. Secondly. The question in controversy must be the same. Thirdly. That had the testimony been different, it would have been prejudicial to the party introducing it. Fourthly, that the verdict and judgment rendered in one case would be evidence in the other; and Fifthly. The legal existence of the first suit. 1 Starkie on Ev. 253, 54; 264, 5, 6, 7, 8; 4 Wash. Cond. Cha. Rep. 186; 1 Munf. Rep. 389. If all these preliminary questions be essential and indispensable, and I take them to be so, the depositions were improperly admitted. In the first place, the parties are not the same. The suit at law was in favor of Hezekiah Harrington as executor, against Jephthah Plarrington indi *717 vidually, and Jephthah Harrington in his own right, and as administrator, and John Harrington, have become the complainants in this suit, against Hezelriah Harrington and all the other legatees by the will. It does not become necessary to inquire whether there is a privity between Hezekiah Plarrington as executor, and the other legatees, as other and distinct parties are made complainants. John Harrington was not so interested in the first suit as to make the depositions admissible, because his rights were not in litigation. It is true he claims under the same instrument of writing, but he claims different property, and the adjudication on that instrument did not conclude him. If the testimony had tended to defeat the deed of gift, I do not think it could have been offered in evidence, in a suit brought against him for his portion' of the property; and if not, it cannot be good for him.
But it is insisted, that although the parties are not identically the same, yet there is a privity, and on this ground, the depositions were properly received. In support of this position, we are referred to the definition of privies given by Jacobs in his Law Dictionary, and they are said to be “ those who are partakers, or who have an interest in any action or thing, or any relation to another.” Fornlius gives user the same definition, but it is so general, that we get no satisfactory idea of privity. A better understanding of the term is gathered from the examples given by the last mentioned author of the different kinds of privies, and I shall endeavor to apply these examples for the purpose of ascertaining whether the privity exists in this case. The counsel for the appellees have divided privies into four kinds, to wit, in blood, in estate, in law, and in deed, and insist that John Harrington is privy in estate. Now let us take the examples given, and see whether they sustain this position of counsel. The first instance given by the author of privies in estate, is as between donor and donee, lessor and lessee; another instance is, “ as he in reversion ■or remainder, when land is given to one for life, and to another in fee, for that their estates are created both at the same time.” A third is between joint tenants, baron and feme, lessor and lessee, &c. From these examples, I am led to conclude that this privity cannot exist, unless one hold under another, and claim title through *718 him, or unless both have an estate in the same identical thing by title accruing at the same time, when the possession of one is not incompatible with the title of the other, or unless the title and possession be joint. There was privity between John Harrington and Mrs. Bradford, if the deed was valid, and also between her and Jephthah Harrington, but I see nothing to raise a privity between Jephthah Harrington and John Harrington. They claimed different property, and the near approach to a privity between them is, that they both claimed by virtue of the same instrument, but each one had a right to have a separate adjudication on it as to the right he claimed under it. I consider the two cases cited above, from 1 Munf. Rep. and 4 Wash. Rep. as strikingly analogous to the present case, and decision of the question. The case last cited was one in which five joint heirs instituted a suit against the defendant, and took depositions. There were many other heirs claiming the same property, under the same ancestor, who subsequently all joined in another suit. The depositions taken in the first suit were ruled out on the ground that had the proof been different it would not have been admissible as against the heirs, Avho were not joined in the first suit, although they claimed the same property under the same ancestor.
The depositions are also objectionable for another reason. They were not offered in connection with the record. There is such a record as that mentioned in the bill, made an exhibit, but is not connected in any manner with the depositions, and we can only know by inference, that it is the same cause in which the depositions were taken.
But even if we should be mistaken in this view of the law, as applicable to the case, we still feel satisfied, that the depositions • were insufficient for the purpose they were designed to accomplish.
There is no doubt but courts of equity will interpose to correct palpable mistakes, for the purpose of carrying into effect the intention of the parties where that intention is clearly shown, but the proof should be clear beyond a doubt, because, that it is better that a doubtful written instrument should stand, than that a doubtful provision should be substituted by parol testimony. Taking *719 the best possible view of the testimony for the complainants, it produces nothing better than mere doubts as to Mrs. Bradford’s intention.
■ The testimony of Mrs. Willis is nothing but hearsay; and that of Nancy East, so far as it has any bearing on the question, would support the- instrument as a will. The witness in substance states,' that she heard" Mrs. Bradford say, she intended the property for Jephthah Harrington and his two sons. In one of the answers, she states, that at several different times she heard Mrs. Bradford say she intended to leave her estate to the individuals above named, and that she wished them to be heirs to her property; This testimony lead's directly to the conclusion, that Mrs. Bradford intended to make this disposition of it by will.
Robert Liles states in substance, that he was present and signed the deed of gift as a witness. That the instrument presented to him at the time of deposing, was the same deed, that it was executed fairly and voluntarily, and that Mrs. Bradford declared at the time, that Jephthah, Gabriel, and John Harrington were her heirs, that they had rendered her services, and the estate would not more than compensate them. He afterwards frequently heard her speak of the deed, and say she had disposed of her property according to her wish. On cross-examination, the witness says he frequently heard Mrs. Bradford speak of the disposition of her property, before he knew any thing of the deed, and she always said she would give her property to those persons. He also states, that the deed was fully and distinctly read over to her, when if was signed. That it was not secretly done. She frequently spoke of it to the neighbors. That she called it a deed, and appeared fully to understand it.- She considered them more entitled to her property than her other relations, and enjoined on Jephthah Harrington that he should give certain sums of money to certain individuals at her death, if she did not make the gifts during her life.
This is, perhaps, the most important testimony offered, being that of a subscribing witness to the deed; and yét it shows nothing like mistake; on the contrary, it is also in support of the instrument as a will. There' is nothing to induce a belief that Mrs: Bradford thought of any thing else than making a disposition of *720 Her property to take effect after her death. The very words used at the time of signing the instrument indicate that she in all probability viewed it in the light of a will. At that time she declared that they were to be her “sole heirs,” a declaration that well comports with what may be considered to be the notions of one unacquainted with the technical meaning of the term, after having made a will; and the use of these words excludes the idea that she believed she was making a gift of her property otherwise than by will. The instrument seems to have been made in anticipation of death, else why did she request Jephthah Harrington to make the gifts of money after her death. So far from any tiring like mistake being shown, it appears that this instrument was read over to her at the time it was executed, and that she perfectly understood it. The necessary conclusion is, that it was such an instrument as she designed to make. The witness says she called it a deed, and appeared perfectly to understand it. If she perfectly understood it, the name by which she might choose to call it cannot be evidence of mistake, or if it be it is but of a mistake in name, which cannot control the provisions of the writing.
It is unnecessary to recapitulate more of the testimony: no additional fact is disclosed. The witnesses heard her speak of the deed and called it so by name. The testimony falls far short of establishing mistake. There, is one idea kept up and sustained throughout the whole of it, to wit: that she did not consider 'the instrument as conveying any right until after her death, and this is the distinguishing feature between a deed and a will. And when alluding to the capacity in which they were to take, we find that she invariably used the term “heirs,” a term not uncommonly applied to those who take by will. That she was in the habit of calling it a deed,, and declared that she would break it if she could, were but circumstances entirely immaterial when contrasted with her perfect understanding of the provisions of the instrument. The character of an instrument is to be determined by the provisions it contains, and not by-the name which may be given it by a person unskilled in technical language; and her impression that she could not revoke the instrument is not to be considered decisive of her power to do so. But even if it be admitted *721 that she probably intended to make a deed of gift, yet we cannot, on the mere ground of probability, reform -written instruments for mistakes, and I therefore think that if the testimony even were -admissible, it is nevertheless insufficient to accomplish the complainant’s purpose.
There is one other point presented which must be disposed of. For the complainant, Jephthah Harrington, it is urged that at all events the cause must be remanded to the chancery court for further proceedings, because he is a legatee under the will, and is entitled to be protected to the extent of his interest. It is true that he is a legatee under the will, but as the case stands it seems to be impossible to afford any relief. This feature in the prayer is evidently secondary, having been adopted only as'a resort in case of failure in the primary object, and hence the showing for this purpose is deficient. He is but a reversionary legatee, having only an interest in the residue of the estate after the payment of debts and specific legacies. His interest is therefore conditional, and he is not entitled to receive it until the administration is completed, or at least until the debts are ascertained and provided for; because until then it cannot be known what he is entitled to. The proper relief could not be granted unless the court of chancery would undertake to administer the estate with a view to ascertain his rights.
It is alleged in the bill that the estate is not in debt, but denied by the .answer, and there is no proof on the subjéct; and a court of chancery will not decree an account to be taken unless there be a sufficient showing for that purpose. The only showing rve have before us is, that the complainant is a residuary legatee, but whether there is or will be any thing for him to take in that capacity does not appear. Besides, the orphans’ court of the proper county has ample power on this subject, and we perceive nothing in this case which makes it necessary to interfere with-its jurisdiction.
. The decree of the chancellor must be reversed, and the injunction dissolved, and the bill dismissed at complainants’ costs.