J. M. HALL ET AL. v. STATE, USE LAFAYETTE COUNTY.

69   529
70   678

69   529
88   782

1. BOND. *County treasurer. Liability of sureties. Code 1880, § 367.*

Ordinarily, the general bond of a county treasurer, given under § 367, code 1880, is not a security for school-funds, because an additional bond is required as to that.

2. SAME. *One bond for all funds. Code 1880, §§ 367, 726. Estoppel.*

But where, from inadvertence or other cause, only one bond is taken, which is, in form, a general bond under § 367, code 1880, though there is no formal agreement between the obligors and officials as to the terms, if, in executing the instrument, it is intended by the officer and his sureties to give a bond sufficient in terms and amount to cover all moneys coming into his hands, this purpose will not fail by reason of ignorance and mistake of fact or law resulting in taking one bond instead of two, and in equity, the sureties will be held liable thereon for misappropriation by the officer of school-money, though a special bond is required as to this by § 726 of the code.

3. EQUITY. *Mistake of law. Enforcing contract intended. Sureties.*

Courts will not make, and can only enforce, contracts. Where parties reject one sort of contract, and make another, though by mistake of law, equity will not relieve. But if, in putting an agreement into form, through inadvertence or mistake of law, it fails to express what the parties intended, equity will effectuate the real intent. Sureties are subject to the same rule as others in this respect.

4. SAME. *Reformation. Liability of sureties. Case.*

The board of supervisors, in ignorance of § 726, code 1880, failed to require of the county treasurer an additional bond as security for school-funds, and took only the general bond conforming, in terms, to § 367 of the code. But this was intended by all parties, including the sureties, as security for all moneys to be received by the officer. *Held,* in equity, that the bond should be reformed, holding the sureties liable for the proper disbursement of the school-funds.

5. RES JUDICATA. *When judgment at law not a bar. Reformation.*

Judgment at law exonerating sureties on a treasurer's general bond from liability for school-funds embezzled by the officer, on the ground that the statute requires an additional bond for such funds, cannot be pleaded as *res judicata* in a proceeding in equity to reform such general

bond, and hold the sureties liable for school-moneys, upon the showing that it was intended, in giving the general bond, to comply with the law and secure all funds.

6. LACHES. *Ignorance and neglect of officials. Allowance therefor.*

Where a county treasurer has held two terms—1884 to 1888—defalcations being discovered at the end of his last term, shortly after which suits are brought to establish liability on his official bond, wherein the sureties escape because not liable at law, it is no defense to a bill in equity to hold them liable, filed in 1890, that the authorities have been guilty of laches. Large allowance must be made for the incompetency and negligence of officials in such matters.

7. BOND. *Failure of principal to sign. Liability of sureties.*

A county treasurer delivered to the approving officers, as his official bond, a bond signed by sureties, in which he was named as principal, and upon the back of which he subscribed the oath of office. He supposed he was executing a valid bond, and served as treasurer under it. *Held,* that he and the sureties were liable thereon, though he failed to sign. (See *McLeod* v. *State, ante* 221, Rep.)

FROM the chancery court of Lafayette county.
HON. B. T. KIMBROUGH, Chancellor.

J. M. Hall was the treasurer of Lafayette county for two terms—1884 to 1888. For each term he executed a general bond, conforming to the requirements of § 367, code of 1880. No additional bond for the security of the school-fund, as required by § 726 of the code, was required or given for either term. Neither the board of supervisors, nor the clerk, nor any of the parties, knew that a separate bond for the security of the school-fund was required. The bond for the first term was in the penalty of $55,000, and for the second term $40,-000. During his two terms, Hall, as treasurer, was a defaulter in a large sum, including county school moneys, sought to be recovered in this case.

The complainant's theory of the case, which seems to be sustained by the testimony in the record, is this: In order that Hall might enter upon the duties of the office to which he had been elected, it was necessary for him to give a bond,

conditioned generally for the faithful performance of his du-
ties as county treasurer, and an additional or special bond as
security for the school-fund.   The fact that the special bond
was required was unknown to him, but he knew he was re-
quired to give a bond for the faithful performance of all his
duties.   He arranged through the defendant, Price, who was
the cashier and active agent of the Bank of Oxford, that the
bank should make his bond as treasurer.   It was agreed that
he should keep his official account with the bank, making
deposits of the money received by him as treasurer, and, in
addition, he was to pay the bank a bonus of $100 per annum
out of his commissions.   The sureties who were sued herein,
except one, were all stockholders of the bank.   The arrange-
ment was carried out, and a general bond was given.   No
reference was made to any requirement of an additional bond
to cover the school-fund, yet it was the intention of Hall and
his sureties, in thus giving bond, to secure the proper dis-
bursement of all the funds which were to come into his
hands, and the penalty of the bond was fixed with a view to
this.   The same arrangement was effectuated at the begin-
ning of the second term.   During the four years the deposits
were made in the bank, and this included the school-moneys,
which were mingled with the other funds, and the bank re-
ceived the bonus of $100 per annum, as agreed.   There was
no fraud or fraudulent intention on the part of the bank or
the sureties.   The bank faithfully accounted to the treasurer
for all moneys deposited with it.   The defalcation of Hall
became known on the expiration of his second term.   Suits
at law were brought on the general bonds, thus given, in the
effort to establish liability thereon for the school-funds em-
bezzled by the treasurer.   These efforts were unsuccessful,
and thereupon this bill was filed in the chancery court
against Hall, and certain of the parties who were sureties
on both bonds, to have the same reformed, so as to include
the school-fund within its protection.   The Bank of Oxford,
was also made a party defendant.   In addition to the above,

it was alleged in the bill that the school-funds, during the two terms, had been mingled with other moneys, and that it was impossible to fix the liability properly without joining the sureties on both bonds. The sureties admitted that they agreed to become liable for the disbursement of moneys by the treasurer, but averred that nothing was said to them about a separate school-fund. They averred that in each instance they signed the general bond, which was the only one they were ever asked to sign, and that they intended to become bound only in accordance with the legal effect of that instrument.

It was also set up in defense of the bill that the matters involved had been adjudicated against the county by the decision of the suits at law holding that the sureties were not liable for school-money's.

It was also claimed that the complainant was barred of relief by reason of laches. The bill was filed November 8, 1890.

In executing the last bond the name of Hall was inserted in the body of the instrument, and he subscribed to the oath of office, which was indorsed on the back of the instrument, but he failed to subscribe his name to the bond which was signed by the sureties. He, however, delivered it to the board of supervisors as his bond, and entered upon the discharge of his duties as treasurer, evidently supposing that he had given a lawful and regular bond. It was contended by the sureties that they were not liable on this bond, because of the failure of the principal to sign it. They averred that they signed the bond upon the condition and with the understanding that he should sign it, but this averment was not established by the evidence.

The case was heard on bill, answer and proof, and the court decreed reformation of the bonds and an accounting, holding that the sureties were liable. To settle the principles of the cause, defendants appealed. The opinion contains a further statement of the case.

*H. A. Barr,* for appellants.

1. The only bonds executed by Hall are those covering county funds, given in exact conformity with § 367 of the code. There is no mistake in these bonds, and they were given according to the intention of the parties. No school-bonds were ever thought of or required. Upon what principle can the sureties be held liable for school-funds? A court of equity may reform an instrument, but it cannot create a contract. *Dunbar* v. *Newman,* 46 Miss., 231; 1 Story's Eq. Jur., § 115.

A mistake of law is not a ground for relief. The exceptions to this rule are few in number and peculiar in character. 1 Story's Eq. Jur., §§ 116, 138.

Equity has no power to make agreements for parties in any case. *Hunt* v. *Rousmanier,* 1 Peters, 14; *Price* v. *Cutts,* 29 Ga., 142; 74 Am. Dec., 52. A party making an illegal assignment cannot have it reformed so as to make it conform to law. 35 Ga., 176; 89 Am. Dec., 280. See also 1 Story's Eq. Jur., § 137.

There was no misrepresentation, undue influence, misplaced confidence or surprise in this case. It was the business of the supervisors to require a school-bond. They were simply ignorant of their duty under the law.

There is nothing in the fact that the bank became the depository of the funds. This did not influence the board not to require a school-bond.

The cases of *Snell* v. *Insurance Co.,* 98 U. S., 85, and *Sparks* v. *Pittman,* 51 Miss., 511, are not authorities for the proposition that equity will correct a mistake of law. This case was not decided in the court below upon the idea of a mistake. The court merely assumed that the sureties ought to have executed a school-bond. Extraordinary assumption. The law imposed upon the supervisors the duty of requiring a separate bond. Code 1880, § 726. The maxim invoked by the chancellor was stretched far beyond legal bounds.

The maxim that equity looks upon that as done which

ought to have been done, has no application here. See 1 Story's Eq. Jur., § 64*g*.

Sureties cannot be bound except by writing, and they stand upon the strict terms of their obligation. Brandt on Suretyship, § 80; 60 N. Y., 426.

2. As Hall did not sign one of the bonds, the sureties are not bound. *State* v. *Martin*, 56 Miss., 108.

The curative statute, § 403, code 1880, applies only to bonds which have been signed. So of § 422. Section 2305 of the code is only applicable to bonds taken in the course of legal proceedings.

The supervisors are responsible for not requiring Hall to give a school-bond, and this proceeding is at least serving the purpose of diverting attention from their own liability.

*Chas. B. Howry*, on the same side.

1. The question of the liability of the sureties on the general bond for the school-fund was settled adversely to the county in the suits at law, and is now *res judicata*. See *State use, etc.*, v. *Hall*, decided by this court at the October term 1890, and *Lafayette County* v. *Hall*, 68 Miss., 719.

2. The bond in suit is a contract that the treasurer will not fail to account for county funds. This is the whole contract. The court is asked to enlarge this contract, so as to include the liability for something beyond its promise, although the bond is regular in form, and without any thing on its face to indicate that something more was intended. The general bond of a county treasurer is not security for the school-funds. They must be protected by a special bond required by § 726 of the code of 1880. *State* v. *Mayes*, 54 Miss., 417; *State* v. *Felton*, 59 *Ib.*, 402; *Lafayette County* v. *Hall*, 68 *Ib.*, 719.

The code of 1880 required a still further special bond for the Chickasaw school-fund. Laws 1880, p. 210.

The liability of sureties is *strictissimi juris*, and cannot be extended by construction or enlarged by acts of others. Brandt on Suretyship, §§ 102, 451; 60 N. Y., 421.

Here there was no fraud or misrepresentation by the sureties. No mention was ever made to anybody of a special bond. The supervisors simply mistook the law, and failed of their duty to require the additional bond.

It is the settled doctrine that if defendants deny an alleged mistake in executing a written instrument, and there be nothing to depend upon but the recollection of witnesses, the allegation will fail. Adams, Eq., §§ 169, 173; Bispham, Prin. Eq., §§ 191, 195 and 470; 2 Johns. Ch., 595; Wharton, Ev., § 1019; 107 Mass., 219.

When parties have deliberately put their engagements in writing it is conclusively presumed that the same contains the whole contract. *Wren* v. *Hoffman*, 41 Miss., 616; *Kerr* v. *Kuykendall*, 44 *Ib.*, 137.

In *Sparks* v. *Pitman*, 51 Miss., 511, the decision rests on a mistake of fact, not of law. This is true also of *Snell* v. *Insurance Co.*, 98 U. S., 85.

Equity will reform contracts in proper cases, but cannot make them. 1 Peters, 14; *Dunbar* v. *Newman*, 46 Miss., 231.

And the writing is the complete evidence of the contract, unless it is shown that by fraud, accident or mistake something was omitted. *Dunbar* v. *Newman, supra;* 2 Johns. Ch., 595, 630; 1 Story's Eq. Jur., § 157.

Had the school-fund been mentioned, the proper bond with proper penalties would undoubtedly have been taken. Equity will not do for one that which he does not think fit to do for himself. Story's Eq. Jur., § 170; Bispham, Prin. Eq., § 193; 13 Iowa, 157; 11 Md., 259; Sugden on Powers, 362, 367. Who shall bear the loss of this school-fund—the sureties, who made no contract in respect to the same, or the agents of the county, who failed to perform their plain duty?

Equity will not relieve against a mistake if it is the result of complainant's own negligence. 1 Story's Eq. Jur., § 136; *Stewart* v. *Stokes*, 73 Am. Dec., 429; 65 Ga., 103; 58 Iowa, 659; 102 Pa., 17; 5 Hump., 541.

A mere mistake of law, unattended with circumstances of

fraud, imposition or the like, will furnish no ground for the interposition of equity. 1 Story's Eq. Jur., §§ 115, 133.

3. If the second bond was not executed by the principal, then the sureties are not liable thereon. *State* v. *Martin*, 56 Miss., 108; 37 Mich., 590; 39 *Ib.*, 187; 2 Pick., 24; 17 Mass., 591; 109 *Ib.*, 72; 12 Am. Rep., 665; 1 Martin (La.), 592; 70 Mo., 228; 14 Cal., 421; 21 *Ib.*, 585.

Section 403, code 1880, applies only to the form of the bond and irregularities. It does not make that a bond which was never signed. Section 2305 applies only to bonds in legal proceedings.

The suggestion of an estoppel against the sureties is without merit, there being no fraud, misrepresentation or concealment on their part. Herman on Estoppel, § 330.

An estoppel *in pais* may be used as a shield, but never as a sword; and estoppels must always be reciprocal. Herman, § 328; 8 Wend., 480.

*J. W. T. Falkner*, on the same side.

*Phil A. Rush*, for appellee.

1. The delivery of the bond by the treasurer with his name written in the body, was equivalent to signing. Murfree on Off. Bonds, §§ 6, 8. See also 14 Johnson, 487; 7 Wend., 345; 28 Minn., 45; 64 Miss., 32.

The sureties are not discharged because of Hall's failure to give a bond. DeGolyar on Guaranty, 224.

At common law, sealing without signing was sufficient. 26 Miss., 281. By § 403 and § 996 of the code of 1880, seals are dispensed with. This change has been wrought since the case of *State* v. *Martin*, 56 Miss., 108, was decided.

The delivery of this bond by the principal, together with the other circumstances, was sufficient to bind him. 2 Blk. Com., 307.

This case is clearly distinguishable from the Martin case.

2. The defense of *res judicata* is without merit. It was

merely held, in the former litigation, that the sureties were not liable *at law*.

3. If the guaranty does not express the intention, a court of equity will reform it. DeGolyar on Guaranty, p. 3; 38 Conn., 508; 51 Miss., 511.

True, equity will not make a contract, but it will effectuate a contract already made, according to the true intent. 10 Ohio St., 544; 15 Mich., 381; 16 Barb., 342; 1 N. Y. Chy., 500; 4 *Ib.*, 661; 2 Vesey, 377; 3 Vesey, Jr., 398, 573; 1 Story's Eq. Jur., § 113 to § 159; 2 Pom. Eq. Jur., § 843 to § 870.

*Kerr* v. *Kuykendall*, 44 Miss., 137, is not an authority in favor of appellants, but sustains our position.

The evidence conclusively shows that the sureties considered themselves bound for all the funds coming into the hands of the treasurer, and the evidence of the mistake in the execution of the bond is plain. As to the degree of proof necessary in a case like this, see 14 Ga., 207; *Sparks* v. *Pittman*, 51 Miss., 511; 8 Wheat., 174; 1 Peters, 1.

The bond would be good, for all purposes, as a common law obligation. Murfree on Off. Bonds, §§ 61–66; *Ib.*, 697 and authorities cited; 30 Miss., 624.

All bonds made good by § 403, code 1880, are good as statutory bonds as well as common law obligations. Mr. Price unquestionably acted for all the sureties, and they are bound by such knowledge as he had. Wade on Notice, §§ 33, 654; 1 Curtis, 514.

In proper cases, a bond will be reformed as against the surety, although, of course, the contract of the surety must be in writing. 2 Pom. Eq. Jur., 867 and notes.

*Edward Mayes*, on the same side.

1. The record fully bears out the complainant's theory in this case. The answer of the sureties is evasive and equivocal. It is a skillful coquetting with the difference between an agreement to give a general bond as well as a school-bond, on the one hand, and an agreement on the other to give a

bond supposing that one instrument would cover all the demands of the law. Where an instrument is executed which professes, or is intended, to carry into execution an agreement, whether in writing or by parol previously entered into, and which, by mistake of the draftsman, either as to fact or law, does not fulfill the manifest intention of the parties, equity will correct the mistake. *Hunt* v. *Rousmanier*, 1 Peters, 1; *Walden* v. *Skinner*, 101 U. S., 577; *Snell* v. *Insurance Co.*, 98 *Ib.*, 85; *Sparks* v. *Pittman*, 51 Miss., 511.

2. The sureties participated in the consideration in this case. They are under a moral obligation wholly distinct from the strict legal liability of their written bond, and there is nothing to prevent reformation as against them. 15 Wall., 140; 51 Mo., 98; 1 Johns. Chy., 607; 2 Hay. (N. C.), 331; 38 Conn., 309; Brandt on Suretyship, § 118.

3. If the bond was not signed by Hall, still it is binding on the sureties, in the absence of any testimony to the effect that they made his signature a condition precedent to their liability. 10 Ohio, 454; 42 Barb., 524; 2 Hall (N. Y.), 584.

The same argument as to the right of reformation as to the question of the school-fund will apply as to the right to reform as to a signature, if the omission to sign was an oversight. On this point, see *Crosby* v. *Middleton*, Precedents in Chy., 309. But the bond was sufficiently signed by Hall. He delivered it as his bond, and entered upon the duties of his office under it. As to this, see *Armstrong* v. *Stovall*, 26 Miss., 275; 45 Mo., 502; 4 Johns., 484; 12 Allen, 138; 3 H. & M. (Va.), 144; 64 Me., 35.

4. The evidence of *res judicata* is disposed of by the case of *Scully* v. *Lowenstein*, 56 Miss., 652.

Argued orally by *H. A. Barr* and *Chas. B. Howry*, for appellants, and *E. Mayes* and *Eugene Johnson*, for appellee.

CAMPBELL, C. J., delivered the opinion of the court.

The general bond of a county treasurer, given under § 367 of the code of 1880, is not a security for school-funds which

come into his hands, because an additional bond is required for school-moneys. Therefore, when nothing occurs except the giving of the general bond, presumably, they who sign it do it with reference to the additional bond required, and intending to bind themselves only for moneys other than school-funds. But if the general bond given should be so worded as to include, in terms, school-money, the obligors would be bound for such money, for the requirement by statute of " an additional bond . . . in an amount not less than the school-funds likely to be in his hands at any one time," looks to the fact, and not the form of security, and may be satisfied by a single paper as well as several. An additional bond is directed to be required of the county treasurer to cover school-funds, because of the apprehended insufficiency of the penalty of the general bond and the purpose to make sure of the safety of school-funds. But if the constituted authorities, through ignorance, inadvertence, or otherwise, in dealing with this matter were to not follow the law by requiring a separate and additional bond for the performance of his duties by the county treasurer as to school-funds, and to take a bond at the beginning expressly stipulating for the performance of all his duties, including his dealings with school-funds, it would be enforceable according to its terms, because of the contract.

It is incontrovertible that Hall and his sureties intended to give a bond sufficient in its penalty and its terms to cover all moneys that should be in his hands from every source. They contracted for that, and designed in good faith to carry out the contract, and thought they had done so, and it was an afterthought to escape liability because only one bond was given. True, there was no formal and express agreement between the obligors in the bond and the officials as to its terms, but it was as plainly implied from what occurred as if it had been expressed. Such was clearly the intention of all concerned, and it should not fail of execution by reason of ignorance or mistake, whether of fact or law, in expressing that intention in the instrument used.

Equity will not make contracts for parties. Its power is confined to enforcing those made by the parties. And where parties, through erroneous views of law, reject one sort of contract, and make another, led thereto by a mistaken opinion as to the law—as in *Hunt* v. *Rousmanier*, 1 Peters, 1—equity will not relieve. But where parties contract for a particular result, and intend to effect it, and fail to accomplish it, even through ignorance or mistake of law, equity will effectuate the intent of the parties. If an agreement is just what the parties intended it should be, no matter what led to it, there can be no interference with it; but if, in putting it into form, it fails to express and stipulate for what the parties understood and intended it should, a case is made for a court of chancery.

The facts of this case bring it within the latter class. Its facts distinguish it very clearly from the ordinary case of a county treasurer giving bond, and make it proper for the chancery court to carry into effect the real intention of the parties—to make the instrument express the thought which the makers had when they signed the bond. Sureties are subject to the same rules as others in this respect.

This matter has not been adjudicated before, and this defense is not available.

The suggestion of laches, as furnishing a ground for denial of the relief sought, loses the force it might have in many cases by the circumstances of this. Large allowance must be made for the incompetence and negligence of ignorant officials in their dealings as public agents, so as to protect the too confiding people from the consequences of their failure of duty, where it can be done, as in this case, without any injustice to the individuals concerned.

The fact that Hall did not sign one of the bonds does not make any difference.

*Affirmed.*