WHITNEY CENTRAL NAT. BANK *v.* FIRST NAT. BANK OF HATTIESBURG *et al.*

(Division B. Sept. 22, 1930. Suggestion of Error Overruled, November 3, 1930.)

[130 So. 99. No. 28697.]

Milling, Godchaux, Saal & Milling, of New Orleans, La., and R. C. Cowan, of Gulfport, for appellant.

Gardner, Brown & Backstrom, of Gulfport, Stevens & Heidelberg, of Hattiesburg, and J. L. Taylor and J. C. Ross, both of Gulfport, for appellees.

**Griffith, J.,** delivered the opinion of the court.

The facts in this case are undisputed, and while, by force of the chancellor's decree, all reasonable inferences run in favor of appellees, we will, for the purpose of discussion, reverse the inferences and state the facts and the reasonable inferences to be drawn therefrom as favorably as may be in behalf of appellant. So doing, the facts are: John R. Pratt, the owner of considerable property, found himself heavily involved by reason chiefly of indorsements on the paper of a business concern in which he had an interest. This concern desired an extension of its indorsed obligations which the appellee banks, the holders of the paper, were willing to grant, provided the paper were secured by a mortgage by Mr. Pratt on all the unincumbered property owned by him. Mr. Pratt was agreeable to this arrangement, but, being unwell and advanced in years, he was unwilling to incumber all his property for these indorsement debts without at the same time doing the honorable part of including all the individual or personal debts which he owed to several different banks, appellant among them.

He commissioned his son to consummate the matter in the manner last mentioned; and the son, accepting the task, made inquiry of all the banks and ascertained the amounts due each. In the course of this inquiry, he was

informed by the business concern heretofore mentioned that the note for ten thousand dollars due appellant bank had been arranged to be taken care of by said concern, and that it would not be necessary to carry that item into the mortgage arrangement. Acting upon the faith that this assurance was genuine, the son, in calling a conference of the banks, omitted appellant bank, and, in the conference at which the terms of the security were agreed upon, appellant bank was not present nor represented. The son did not mention in the conference that anything was due appellant bank, and none of the other banks, appellees here, knew of the debt to appellant bank until after the mortgage had been executed, and the matter had been thus for the time closed.

The mortgage was executed on November 21, 1927, and Mr. Pratt died on December 12th following. A year later the mortgage was foreclosed, the property was purchased at the sale by the mortgagees, without surplus. There was otherwise no estate out of which to pay appellant's unsecured note, the concern, which promised the son to care for it, having in the meantime wholly failed to do so, and still so fails, being apparently unable to redeem its said promise.

Appellant thereupon has filed its bill praying that, by way of reformation, it be admitted as a mortgagee in the security aforesaid, and as a proportionate party in interest in the foreclosed property. The bill is bottomed upon the equitable doctrine of reformation for mistake, and it is the insistence of appellant that, since it was Mr. Pratt's intention to secure all his bank creditors proportionately, and all alike without preference, this intention through mistake was not carried into execution when the mortgage was made, and that therefore it is within the province and duty of a court of equity to rectify this mistake and make the transaction conform to the true intention.

There are several insurmountable difficulties in the way of appellant, and the first lies at the threshold. It is clear that, when the mortgage was actually executed, it was the intention of Mr. Pratt to omit appellant therefrom. True, this immediate intention arose out of the error in supposing that appellant's note would be otherwise paid, which, as it now turns out, was a complete error; but, as was tersely said by this court in Wise v. Brooks, 69 Miss., page 895, 13 So. 836, the point of inquiry is, What did the mortgagor intend to do at the time, informed as he was, not what he would have done, or would have intended to do, had he been differently informed, or had known better? To push the doctrine of mistake substantially beyond the limits thus stated would be to involve business transactions in an unendurable uncertainty, for it is no less than an obvious fact that many, very many, of our executed contracts express intentions, which have been formed out of a succession of mistaken considerations. And if the door be opened, where in the order of succession is it to be closed?

The second difficulty is that a relievable mistake must be mutual to both sides of the transaction. It is undisputed that the mortgagee banks had never heard of appellant's debt and did not know of its existence. So far as their knowledge was concerned, it was a fact nonexistent. Intention, as the term is understood in the law, is a derivative of knowledge, although the knowledge may be imperfect. So that, when the element of knowledge is wholly absent, nonexistent, there can be no intention in respect to it, else we would have the impossible conception of a derivative from nothing. The mistake that equity relieves against has reference to intention; it seeks to make the instrument speak the mutual intention. It does not undertake the threefold function of gathering the true facts for the parties, and, this done, to form for them an intention on the facts thus gathered,

and thereupon to execute for them a contract which they did not make.

Realizing the difficulties stated, appellant insists finally that, since Mr. Pratt was delivering all the unincumbered property owned by him, delivering without reservation everything that appellee banks could have obtained by any process known to the law, the case should be likened to a donation, and that the ultimate intention of the donor should prevail regardless of any particular intent on the part of the donees. It is enough to say of this that the transaction was not a donation, but was one of business for a valuable consideration. Appellees were granting an extension, and it is well settled that a security given for an extension of a pre-existing debt constitutes the holder thereof an incumbrancer for a valuable consideration. 13 C. J., p. 344; 41 C. J., p. 386; 1 Jones on Mortgages (8 Ed.), pp. 766-7; Sanders v. Smith (Miss.), 5 So. 514; Schumpert v. Dillard, 55 Miss., pages 361, 362.

Affirmed.