OLIVER *v.* BOARD OF SUPERVISORS, et al.

Division A. Apr. 16, 1951.

No. 38014 (51 So. (2d) 766)

Wells, Wells, Newman & Thomas, L. O. Smith, Luther Whittington and Berger & Callon, for appellant.

450

**Jno. E. Stone,** Assistant Attorney General, **Charles F. Engle** and **Gore & Gore,** for appellees.

**Lee, J.**

Rees R. Oliver applied in writing to the board of supervisors of Adams County to lease for oil, gas and mineral development lieu land school section 29, Township 5 N, Range 3 W, containing 640 acres, more or less. He proposed (1) a primary term of 6 years; (2) an initial consideration of $5 an acre, amounting to $3,200; and (3) annual delay rentals of $1 per acre per year, amounting to $1,280, for 1948 and 1949. The lease was to provide for royalties of one-eighth of the oil, gas and casinghead gas, and other royalties on other minerals, as proposed in the attached specimen lease. The application asked for consideration and acceptance, that the board enter its order of approval and that the "lease be executed and approved by proper authority in. accordance with House Bill 688 of the General Laws of Mississippi of 1942". House Bill 688 is Section 6600, Code 1942. The superintendent of education approved the application and recommended its acceptance. The full amount of the consideration and delay rentals for two years was tendered.

On January 6, 1947, the board passed and adopted the following order of acceptance:

454

"Upon motion made, duly seconded and carried it is hereby ordered that the following order authorizing lease of school land for oil, gas and mineral exploration and development be granted.

"Now on this 6th day of January A. D. 1947, being the first Monday in January, 1947, at a regular meeting of the board of supervisors of Adams County, Mississippi, coming on to be heard the application of Rees R. Oliver to lease for oil, gas and mineral exploration and development purposes the following described section of land lying and being in Adams County, Mississippi, to-wit:

"School Section 29, Township 5 North, Range 3 West, containing 640 acres, more or less with the endorsement of approval thereon by the Honorable V. Josephine Fitts, Supt. of Education of said county, with recommendation that it be accepted, and with copy of the proposed lease attached thereto;

"And it appearing to the board of supervisors that the initial consideration of $3,200, being $5 per acre for said land, and the annual delay rentals in the sum of $640, being $1 per acre therefor, together with the royalties of ⅛th of the oil, gas and casinghead gas, and other royalties on other minerals, all as in said proposed lease set forth and provided, are proper and adequate; that the annual delay rentals for the years 1948 and 1949, aggregating the sum of $1,280 are payable in advance;

"And having examined and read the proposed lease which is made for the primary term of six years and so long thereafter as oil or gas or other minerals is being produced from said lands; and finding that said lease is in proper form and that the terms and conditions thereof in all respects conform to the law; and believing that the execution of such a lease would be to the best interests of, and that the revenues therefrom would be of material benefit to, the sixteenth section school fund, and that such application should be accepted and approved:

"It is therefore ordered and adjudged that the application of Rees R. Oliver to lease the above described land

for oil, gas and mineral exploration and development be, and the same is hereby accepted and approved; and H. W. Carter, Pres. of the board of supervisors of Adams County, Miss., be and he is hereby authorized, empowered and directed to execute and deliver to the said applicant, Rees R. Oliver an oil, gas and mineral lease in similar form to the proposed lease attached to said application, a copy of which is attached hereto, marked Exhibit 'A' and made a part hereof, payment, etc.''

Pursuant to the above order, the president and the clerk executed and delivered a lease for ''all of Section 29, Township 5 North, Range 3 West, containing 640 acres, more or less''. A printed form was used. It contained a clause that the lease extended to adjacent or contiguous lands. It also provided for pooling, permission to use wood, and where gas was not sold or used, $100 could be paid and such payment would be deemed production within the meaning of the lease.

Thereafter Oliver discovered that Section 29 contained 793.79 rather than 640 acres. He immediately asked the board to reform the lease so as to embrace the correct acreage. He tendered the proper amount to cover the excess acreage at $5 for the initial consideration and $1 per acre per year for 1948 and 1949 as delay rentals. The board declined to make the reformation. He tendered a like amount to the superintendent of education, but acceptance was refused.

Oliver then brought this suit. The bill set out the history of the case. It was alleged that, in the negotiation and execution of the lease, the parties were in good faith and tried to conform to the requirements of the law; that the clause in regard to pooling, permission to use wood, and the $100 payment as to gas not sold or used was unenforceable; and that its inclusion was by mutual mistake. It was further alleged that the section contained 793.79 rather than 640 acres; that the contract was for the lease of the whole section and the acreage was estimated to be 640 acres; and that the failure to

include the correct acreage was a mutual mistake. The prayer of the bill was for reformation of the lease so as to delete the clause in regard to pooling, permission to use wood and the $100 payment as to gas not sold or used, and to correct the acreage so as to show 793.79 rather than 640 acres.

The board of supervisors and the superintendent of education answered and made their answer a cross-bill, in which they were joined by the State Land Commissioner and the Attorney General. It was charged therein that the provisions for pooling, permission to use wood, the $100 payment for gas not sold or used, and for the inclusion of adjacent or contiguous land, were invalid and nullified the lease. It was further charged that the failure to pay the $1 per acre per year rental on the excess acreage worked a forfeiture because of failure to comply with Section 6600, supra; that there was no mistake of fact; but if a mistake was made, it was one of law. The prayer of the cross-bill was for cancellation.

The lower court held that there was no mistake of fact, but if there was a mistake at all, it was one of law; and that the payment for 640 acres and rental of $1 per acre per year thereon, when there were in fact 793.79 acres, rendered the lease void. From a dismissal of the original bill, Oliver appealed.

Section 6600, supra, gives to boards of supervisors, upon approval of the superintendent of education, authority, in their discretion, to lease sixteenth section or lieu lands. There is this limitation therein: ". . .; provided, however, that said school lands shall not be leased for oil, gas and mineral exploration and development for less than one dollar per acre per annum so long as rentals are paid under the terms of the lease executed by said board."

 ██ In leasing such land, responsibility devolved upon the board to determine the number of acres. That determination was requisite to the performance of this duty. In so doing, they were under the obligation to

exercise a high degree of care. Humble Oil & Refining Co. et al. v. State, 206 Miss. 847, 41 So. (2d) 26. And the presumption is that they did what was lawful and necessary. Trotter v. Frank P. Gates & Co., 162 Miss. 569, 139 So. 843.

 Oliver's application, the board's order, and the lease constituted the contract. From an examination of these instruments it appears that the parties were of the opinion that the section contained 640 acres. They, therefore, estimated the acreage accordingly. There were two plats on file in the office of the chancery clerk. The older showed 640 acres, whereas the newer accounted for 793.79. The lease covered the whole section at so much an acre. When it became apparent that there were 793.79 acres, Oliver was obligated to pay the difference. He was indebted to the county in that amount. If the shoe were on the other foot, so to speak, undoubtedly the county would have the right to recover the balance. Oliver endeavored to meet his obligation. He tried to pay it. He tendered the amount due—both on the initial consideration of $5 per acre and $1 per acre per year. But the authorities refused to accept.

 Equity should and will look to the actual substance of a transaction rather than its mere form. Grandberry et al. v. Mortgage Bond & Trust Co., 159 Miss. 640, 132 So. 334; Citizens Bank v. Frazier, 157 Miss. 298, 127 So. 716.

Of course, equity will not make contracts for parties. "If an agreement is just what the parties intended it should be, no matter what led to it, there can be no interference with it; *but if, in putting it into form, it fails to express and stipulate for what the parties understood and intended it should, a case is made for a court of chancery.*" Hall v. State, to Use of Lafayette County, 69 Miss. 529, 13 So. 38, 39. (Emphasis supplied).

 Section 6600, supra, does not expressly require the forfeiture of a lease for failure to comply with its terms. And generally the law does not favor forfeitures.

Citizens Bank of Hattiesburg v. Grigsby et al., 170 Miss. 655, 155 So. 684; Williams v. General Insurors, Inc., et al., 193 Miss. 276, 7 So. (2d) 876.

The application expressly asked that the lease be granted in accordance with the law. There was no contention of bad faith. Clearly there was no purpose to obtain any right or advantage contrary to law. The parties were evidently mistaken as to the number of acres in Section 29. Obviously such mistake was mutual. The lease should be reformed to speak the contract. McAllister v. Richards, 103 Miss. 418, 60 So. 570; Brimm v. McGee, 119 Miss. 52, 80 So. 379; Pomeroy's Equity Jurisprudence, Vol. 3, p. 326.

There is no need for concern about pooling, permission to use wood or the $100 payment for gas not sold or used. Neither is it necessary for us to say whether or not those provisions were enforceable, because, in each instance, the appellant, in his bill, conceded that there was no intention to include those provisions in the lease, and that such inclusion was a mistake. Likewise, the provision as to adjacent or contiguous land can be summarily dismissed because the county, in fact, owned no such land.

In accordance with the foregoing views, the decree of the learned chancellor is reversed, and a decree will be entered here (a) reforming the lease so as to show 793.79 instead of 640 acres; (b) directing the acceptance of the tender of $5 an acre for the additional acres and all accrued delay rentals; and (c) deleting the provisions as to pooling, permission to use wood, and the $100 payment as to gas not sold or used.

Reversed and decree here.

**Kyle, J.,** took no part.