# Smalley, et al. *v.* Rogers

No. 40633          February 3, 1958          100 So. 2d 118

*Hannah, Simrall & Aultman,* Hattiesburg, for appellants.

*T. W. Davis, Jr.,* Hattiesburg, for appellee.

ARRINGTON, J.

J. D. Smalley and H. W. Smalley, appellants, appeal from a decree of the Chancery Court of Forrest County granting reformation of a certain deed from J. L. Rogers, appellee, to John Hudson, Jr.

On August 27, 1952, appellee was the owner of the surface of the lands in Forrest County described as the E½ of the SW¼, Section 5, and the E½ of the NW¼, Section 8, all in Township 1 North, Range 13 West. Appellee owned no minerals whatsoever under the SE¼ of the SW¼ of Section 8, and only owned one-half of the minerals under the E½ of the SW¼ of Section 5 and the NE¼ of the NW¼ of Section 8. On said date, he conveyed all of said lands to John Hudson, Jr., by warranty deed, reserving unto himself one-fourth of the minerals under the 120 acres described as the E½ of the SW¼ of Section 5, and the NE¼ of the NW¼ of Section 8. No exception was made in the deed of the minerals not owned by him.

On September 2, 1952, John Hudson, Jr., conveyed by warranty deed to H. W. Smalley the lands described as the E½ of the SW¼ of Section 5, and conveyed to J. D. Smalley the lands described as the E½ of the NW¼ of Section 8. Each of these deeds contained the following clause: "This conveyance is made subject only to such prior reservations of minerals as were reserved by former grantors, it being the intention of the grantor herein to convey any and all mineral interests owned by him under the above described land."

The record shows that J. D. Smalley acted for his brother, H. W. Smalley, in buying the land.

John Hudson, Jr., and J. D. Smalley both testified upon the trial of the cause, as well as the appellee and the attorney who prepared the deed from J. L. Rogers to John Hudson, Jr. The testimony establishes a clear case for reformation as between the appellee and John Hudson, Jr., on the ground of mutual mistake. Mr. Hudson testified: ''He did tell me that there was one 40 that he didn't have any minerals under, and there were some more he had sold, and, therefore, he was going to have to reserve a portion of it.'' He further testified that he carried it to a lawyer to have it checked to see if he was getting any minerals and that it was understood that appellee was to reserve a part of the minerals he then owned; that J. D. Smalley asked him if he would get all of the minerals with the land and that he told him he didn't know anything about the minerals; that J. D. Smalley asked him to give him time to look it over; that he told him he had had it checked and that he, Smalley, could have it rechecked if he wanted to; that J. D. Smalley knew the land was leased and that the portion of annual delay rentals paid to him by Rogers had been turned over to J. D. Smalley; that neither J. D. nor H. W. Smalley had ever demanded any additional rental. The cancelled checks of appellee show that the amount of rentals paid to John Hudson, Jr., by appellee were in the amount of $30 annually. Hudson also testified that he had requested J. D. and H. W. Smalley to execute an instrument to the effect that appellee was the owner of an undivided one-fourth interest in the minerals.

J. D. Smalley testified that Hudson told him, ''You can have what I've got''; that it was his intention in buying the land to acquire such interest as Mr. Hudson had when he sold the land. Upon completion of the examination of J. D. Smalley, the court asked him the following questions:

''Q. Mr. Smalley, when you negotiated with Mr. Hudson to acquire this property and he tendered you the

deed, together with his statement, he was conveying to you only that which he had, did you, between that time and the time you paid Mr. Hudson a consideration for whatever it was you acquired, cause an attorney to examine the records of Forrest County, Mississippi, to advise you what you were acquiring?

"A. I didn't. John had told me he had had it checked, but I didn't.

"Q. Did you at the time Mr. Hudson tendered you a deed know what you were acquiring?

"A. No, sir."

■■■ One of the assignments argued by the appellants is that the court erred in admitting parol evidence to show the intention of the parties to the deed as the deed was plain and unambiguous. The appellant cites numerous authorities to support his contention, however, these cases are not applicable in reformation proceedings.

"It is practically a universal rule that in suits to reform written instruments on the ground of fraud or mutual mistake, parol evidence is admissible to establish the fact of fraud or of a mistake and in what it consisted, and to show how the writing should be corrected in order to conform to the agreement or intention which the parties actually made or had, and this, even though the instrument in question is within the the statute of frauds. So far as the introduction of such proof may be said to violate the statute, it is immaterial whether it comes from the complainant or the respondent. The nature of the action is such that it is outside the field of operation of the parol-evidence rule. If this were not so, a rule adopted by the courts as a protection against fraud and false swearing would, as has been said in regard to the analogous rule known as the statute of frauds, become the instrument of the very fraud it was intended to prevent. Evidence of fraud or mistake is seldom found in the instrument itself, and unless parol evidence

may be admitted for the purpose of procuring its reformation, the aggrieved party would have as little hope of redress in a court of equity as in a court of law.

"Generally, it may be said that any testimony which tends to prove the mistake alleged or the intention of the parties is admissible. A witness in a position to know may testify concerning the intention of the parties to an agreement, to the same effect as to any other fact." 45 Am. Jur., Reformation of Instruments, Section 113.

In the case of McAllister v. Richardson, et al., 103 Miss. 418, 50 So. 570, the Court held that it was well settled in this State that a court of equity has power to reform a deed so that it will conform to the real intention of the parties. Whitney Central National Bank v. First National Bank, 158 Miss. 93, 130 So. 99.

In Brimm v. McGee, 119 Miss. 52, 80 So. 379, which was a suit for reformation, the Court said: "The main argument of appellant amounts to this: That since the parties intentionally used in their deeds the very terms of description written in the deeds, and there is no ambiguity on the face of the conveyances, they are now bound by the documents as written. But the jurisdiction of equity should not be so circumscribed. It is not the appearance, but the realities, which govern."

In Oliver v. Board of Supervisors, et al., 211 Miss. 447, 51 So. 2d 766, this Court said: "Of course, equity will not make contracts for parties. 'If an agreement is just what the parties intended it should be, no matter what led to it, there can be no interference with it; but if, in putting it into form, it fails to express and stipulate for what the parties understood and intended it should, a case is made for a court of chancery.' Hall v. State, to Use of Lafayette County, 69 Miss. 529, 13 So. 38, 39."

In view of the testimony in this case and the authorities cited, we think there was ample evidence to sustain the court in decreeing reformation of the deed.

██ ██ It is next argued that the appellants are bona fide purchasers of the lands in question without notice as to them. In 76 C. J. S., Reformation of Instruments, Section 59, page 410, is found the following:

"Who deemed bona fide purchaser. In order to constitute one a bona fide purchaser within the rule he must have parted with value and he must have taken without notice.

██ ██ "Sufficiency of notice. The notice required to deprive a purchaser or mortgagee of the status of a bona fide purchaser and to make an instrument reformable as against him may be actual or constructive. So, it has been held that, under the particular facts and circumstances, a party is not an innocent purchaser if he had notice of a prior conveyance, or if he knew of the mistake or of the other's claim before he paid the purchase price; neither is he, if he was conscious of having the means of such knowledge and did not use them as an ordinarily prudent and diligent person would have done, or if there were circumstances sufficient to put him on inquiry. If there were circumstances which, in the exercise of common reason and prudence, ought to put him on particular inquiry, he will be presumed to have made that inquiry, and will be charged with notice of every fact which that inquiry would have given him. A purchaser or mortgagee is charged with knowledge of the facts disclosed in recorded instruments affecting the premises. . . ."

In the case of Adams, et ux v. Hill, et ux, 208 Miss. 341, 44 So. 2d 457, where reformation was allowed against a subsequent purchaser on the ground that he had constructive notice, the Court there quoted from Dead River Fishing and Hunting Club v. Stovall, et al, 147 Miss. 385, 113 So. 336, as follows:

". . . . this Court stated the rule in these words: 'A purchaser of land is charged with notice not only of every statement of fact made in the various conveyances constituting his chain of title, but he is also bound to take

notice of and to fully explore and investigate all facts to which his attention may be directed by recitals in said conveyances contained. The duty is also imposed on him to examine all deeds and conveyances previously executed and placed of record by his grantor—either immediately or remote—if such deeds or conveyances in any way affect his title. And if in any such deed or conveyance there is contained any recital sufficient to put a reasonably prudent man on inquiry as to the sufficiency of the title, then he is charged with notice of all those facts which could and would be disclosed by a diligent and careful investigation.' ''

We do not think there is any merit in the appellant's claim of innocent purchasers for value without notice in view of the clause in the deeds to them that the conveyances were made subject to such prior reservations of minerals as were reserved by former grantors; the testimony of John Hudson, Jr., that he told Smalley that he didn't know anything about the minerals and he could have it checked, and the testimony of J. D. Smalley that it was his intention in buying the land to acquire only such interest as Hudson had, and that he did not know what he was acquiring, was sufficient notice to put him on inquiry, and was constructive notice that prior reservations of the minerals were reserved by former grantors which would have been revealed by an examination of the records of Forrest County.

We are of the opinion, from all the evidence in this case, that the appellee was entitled to have the deed reformed so as to carry out the intention of the parties. It follows that the decree of the court below is affirmed.

Affirmed.

*Roberds, P. J.,* and *Lee, Holmes* and *Ethridge, JJ.,* concur.