**SUNSHINE GRAIN COMPANY,**
Appellant,

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY et al.,**
Appellee.

No. 17602.

United States Court of Appeals
Fifth Circuit.

Oct. 9, 1959.

Guy Mitchell, Jr., Mitchell & McNutt, Tupelo, Miss., for appellant.

Leslie Darden, New Albany, Miss., Chester L. Sumners, Will A. Hickman, Sumners & Hickman, Oxford, Miss., Smallwood, Darden & Sumners, New Albany, Miss., for appellee.

Before JONES, BROWN, and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

In the early part of 1957 a group of business men from Pontotoc, Mississippi, and from Red Bay, Alabama, organized the Sunshine Grain Company, to build and operate a grain elevator near Tupelo, Mississippi. W. F. Boone, one of the organizers, was elected to the Board of Directors and made Secretary of the Company. Boone operated a general insurance agency in Pontotoc. He was an experienced agent; for thirty years he had represented the United States Fidelity and Guaranty Company.

Sunshine had two building projects, a grain elevator and a combination office building and corn crib. Sunshine constructed the office and corn crib itself. It employed building contractors to construct the grain elevator. The contractors were required to carry full public liability insurance, which they did with the Travelers Insurance Company.

Sunshine applied to Boone for a public liability policy. Boone decided that a "Manufacturer's and Contractor's" policy should be carried. This policy has less extensive coverage than a comprehensive liability policy. It expressly excluded elevators from the hazards covered by the policy. Boone wrote May 30 to the state agency for the United States Fidelity and Guaranty Company requesting the policy. He received the policy a few days later and, as Secretary of Sunshine, filed it with his Sunshine papers.

The Sunshine grain elevator contains a manlift. This is a small elevator, about three feet square, with an ordinary floor and with metal grille on the sides and overhead, built to carry one person from floor to floor. There is no doubt that it falls within the policy definition of an elevator.

October 15, 1957 Sunshine celebrated the completion of its grain elevator by having open house for visitors. One of the visitors fell from the manlift and was killed. Her estate threatened suit.

There was some question as to whether Sunshine had accepted the grain elevator from the building contractor by October 15, 1957, and doubt therefore as to whether the contractor or Sunshine was liable. Sunshine filed a suit for a declaratory judgment to determine whether

the contractor's insurer, Travelers Insurance Company, or the United States Fidelity and Guaranty Company was liable for the loss. Sunshine asked that the policy be "reformed to list the lift under the description of hazards because of the mutual mistake" of the parties in not including the manlift. Travelers defended on the ground that the contract for the construction of the grain elevator had been completed and the building accepted. On motion of defendants for a directed verdict, the district court dismissed the suit. The plaintiff prosecuted no appeal as to Travelers.

The district court found that the liability arising from the use of the manlift elevator was not covered by the United States Fidelity and Guaranty Company policy and declined to reform the policy. We affirm.

Sunshine contends, first, that since Boone was acting in a dual capacity, as agent for the insurer as well as for the insured, his knowledge that Sunshine wanted full coverage should be imputed to his principal, United States Fidelity and Guaranty Company. Second, Sunshine contends that the policy should be reformed, because the intent of both parties was to have the policy cover the risk in question. The two contentions are so interrelated that we see no point in discussing them separately.

The so-called mistake, if any, pares down to Boone's failure to transmit a secret intention to the insurer. There is no evidence in the record, even in Boone's self-serving testimony, that anyone connected with Sunshine, except himself, considered comprehensive coverage. There is nothing in the record to show that anyone gave a thought to the manlift. To permit reformation in this case would allow Boone to remake a contract on the basis of secret terms he made with himself.

On the other hand, the evidence is clear that the policy issued was the policy requested. May 9 Boone wrote United States Fidelity and Guaranty Company's state agent: "We will have you issue a W/C [Workmen's Compensation] and MFC [Manufacturer's and Contractor's] policy covering our liability." May 30 Boone wrote again, requesting the policy in question. The policy on the first page, in legible type, shows that elevators along with four other hazards are not covered. On the second page elevators are again mentioned so as to put anyone on notice as to their exclusion. On page three of the policy elevators are mentioned in three separate places as excluded from coverage, and in the policy section on definitions the following definition is found:

> "(a) Elevator. The word 'elevator' means any hoisting or lowering device to connect floors or landings at any building owned, rented or controlled by the Named Insured * * * whether or not such device is in service, and all appliances thereof, including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery * * *."

Finally, on the last page of the policy, elevators are again mentioned so as to put any reasonable person, and certainly an insurance agent of thirty years experience, on notice that elevators are excluded.

Boone admitted that he knew the policy was "very much different" from a comprehensive policy which would have covered the risk, admitted that he was familiar with both types of policy, and admitted that he knew the MFC policy "does not include an elevator unless specifically included". When Boone received the policy he examined it, "glanced over it", so at that time and for four months thereafter Boone and Sunshine knew the limits of coverage as set out in the policy. They also knew, certainly Boone knew, that they were paying a lower premium than they would have to pay for comprehensive coverage.

Boone stated that he knew of the existence of the manlift because he had seen it during the construction of the elevator. What he says he did not know is that a manlift is considered an elevator.

The equitable remedy of reformation of contracts is based on the finding that the contract as reformed represents the real agreement between two or more contracting parties. The mistake of parties must be mutual. The mistake must be a mistake of fact. To search for the semblance of a mutual mistake here, we must penetrate the mind of one man, split his personality in two, and find that Boone—Sunshine agreed with Boone—U.S.F. & G. to obtain comprehensive coverage, including risk of loss from use of the manlift, but the two Boones (and therefore the two principals) neglected asking for the "agreed" coverage because of the mistaken belief of Boone—Sunshine—U.S.F. & G. that the manlift was included in the hazards. That is carrying the notion of a split personality too far.

Such as it was, the mistake was a mistake of law and not a mistake of fact. 5 Williston on Contracts. Sec. 1586; Ingram Day Lumber Co. v. Robertson, 1922, 192 Miss. 365, 92 So. 289; Whitney Central Nat. Bank v. First National Bank of Hattiesburg, 1930, 158 Miss. 93, 130 So. 99. Further, there was no mutuality of mistake. Allison v. Allison, 1948, 203 Miss. 15, 33 So.2d 289. In any event, the proof falls far short of the requirement of Mississippi law that "parol testimony to reform must be received with 'great caution and distrust'" and "the proof should be clear beyond a doubt". Frierson v. Sheppard, 1947, 201 Miss. 603, 29 So.2d 726, 727. See also Harrington v. Harrington, 1838, 2 How. 701, 3 Miss. 701; Newman Lumber Co. v. Robbins, 1948, 203 Miss. 304, 34 So.2d 196; and American Alliance Insurance Co. v. Alford, Miss.S.Ct., 1957, 92 So.2d 191.

Weighing all the circumstances, we agree with the district court:

"The insurance company prepared a policy which was in direct compliance with the request, as I view the request, granting them much cheaper rates than they would have had otherwise. That policy was sent back up there, it was accepted, they knew what was in it, they did not apparently know the legal significance of what was in it, but they knew everything was there in it that they had asked for * * *."

There is no merit to the appellant's alternative contention that the manlift was covered under the terms of the policy as a "newly acquired elevator". The policy expressly excludes elevators, existing elevators or newly acquired elevators.

Judgment is

Affirmed.