MARY J. MᶜALLISTER *v.* S. M. RICHARDSON, ET AL.

[60 South. 570.]

1. REFORMATION OF INSTRUMENT. *Deeds. Equity. Mistake in description. Delivery. Presumption. Evidence.*

A court of equity has power to reform a deed so that it will conform to the real intention of the parties.

2. REFORMATION OF DEED. *Mistake in description.*

Where a party intending to convey by deed the only property which she owned, by mistake in copying the numbers of her land from a tax receipt conveyed other and different land, it was proper by a decree of a court of equity to correct such mistake.

3. DEEDS. *Delivery. Presumption.*

   The possession by a grantee of an unrecorded deed and its production on the trial by him is presumptive evidence of its delivery to him.

4. EQUITY. *Remanding to rules. Proof.*

   , The power of the chancery court to remand a cause for further proof at any time before final decree, and in some cases after it, with or without the consent of parties, is one of the marked characteristics distinguishing it from a court of law and is one of its most salutary and beneficent powers.

APPEAL from the chancery court of Tippah county.

HON. J. T. BLUNT, chancellor.

Suit by S. M. Richardson and others against Mary J. McAllister. From a decree for complainants, defendant appeals.

See, also, 57 South. 547.

The opinion of the chancellor, which stated the facts, is as follows:

"This bill was filed asking the correction of an alleged misdescription of land numbers, and to quiet title to same.

"Mrs. A. E. Ford died in the year 1907, leaving a sister, Mrs. Mary McAllister, the defendant herein, as her only heir at law. It is complained by complainants that before her death Mrs. Ford made and delivered to them a deed conveying all her real estate, but by a mistake of the scrivener the wrong land numbers were written in the deed. The defense denied that any deed was ever made, or, if made, it was never delivered, hence no conveyance. They further say, if the deed was made, it was a testamentary document, and, being voluntary and without consideration, is not subject to correction, but must stand as written.

"I think the evidence establishes the fact that Mrs. Ford intended to convey her land to the complainants. I think, also, that it establishes that the deed was properly executed, and that the misdescription of the land was written through mistake.

"The only difficulty that I encountered was as to the delivery. The objections by defendant to the introduction of Mrs. Richardson and her husband to establish their claim against the decedent are sustained, but, aside from their testimony, *prima facie* Mrs. Richardson is shown to have been in possession of the land, and in no way, except by inference, has it been shown that her possession was not legal. The paper offered in connection with the deed, tending to show it was a will, cannot be considered for the reason it was never signed nor adopted by any of the parties whose names were attached.

"As to the delivery: Bartlett, who wrote the deed, says Mrs. Ford intended it to be a warranty deed from the time it was made. W. H. Foote says Mrs. Ford told him more than once that she wanted to convey her land to Mrs Richardson, and had done so. Emmett Richardson testifies that he saw the deed in his mother's possession some months before Mrs. Ford's death.

"As to the consideration, the deed recites on its face three hundred dollars. Leaving out Mrs. Richardson's testimony, which is excluded on defendant's motion, there is no proof that the consideration was not paid. Mrs. Ford had the right to place an estimate on the consideration which moved her, whether it was cash paid, services already rendered, or to be rendered. There was testimony to the effect that Richardson had helped Mrs. Ford in the past and that he would continue to do so.

"My finding is in favor of complainants, and a decree may be prepared and sent to me for signature, correcting the deed so as to insert the correct numbers of the land and also quieting the title to same, so far as Mrs. AcAllister's claim is concerned.

"Full time will be given to defendant's counsel to prepare and present bill of exceptions and perfecting an appeal.

"Let the decree be submitted to opposing counsel before being sent to me."

*John Y. Murry, Jr.*, for appellant.

We desire to discuss the errors of the trial court covered
·by the assignment of errors herein under three general
propositions the last two of which are most relied upon
and seriously presented to secure a reversal of the decree
entered below and as warranting a decree for defendants
(appellants) by this court, to wit:

First.   The court erred in remanding—of its own mo-
tion, such relief not having been asked for by plaintiffs'
counsel—said cause to rule after it had been set down for
hearing and fully developed by plaintiffs' counsel, defend-
ant excepting to such action.   Second.   The decree was
contrary to the evidence.   Third.   The decree was con-
trary to law governing in the case.

Of these in their sequence:

The court erred in remanding, of its own motion, said
cause to rules over the exception of defendants after it was
set down ·for hearing and developed by plaintiffs.   An
examination of the record will disclose that there was no
particle of testimony, other than the incompetent testi-
mony of plaintiffs themselves, that the alleged deed was
ever delivered to plaintiffs.

The action of the court below in remanding this cause
to rules, on its own motion, after attorneys for plaintiffs
had closed their case wholly failing to make out a case,
and after counsel for defendant had moved to exclude the
testimony as insufficient to warrant a decree, was a serious
abuse of judicial discretion.   The most that could have
been legally done would have been to allow plaintiffs, had
they so requested, to dismiss their bill without prejudice.
They did not ask such action and defendants should have
had a decree.

Whether or not such alleged abuse of discretion will
warrant a decree for defendants in this tribunal, it is
nevertheless called to the attention of the court for a
twofold purpose:   (1)   To secure an announcement that

will prevent trial courts in the future from volunteering, in litigated cases, to assist one or the other of interested parties. (2) To show an insensible bias toward the plaintiffs herein which later probably dominated the judgment of the court in his findings.

Second. The decree entered below in this cause was contrary to the evidence: (1) Because the proof shows that the alleged deed is shown by the testimony to have been intended to take effect at the death of Mrs. Ford and was, therefore, an attempted will and not a deed. If it was intended as a will, it was not properly executed and is void. If it were a will, it could not be reformed.

These three propositions are hornbook law, and this court needs no citations in support of such elementary propositions.

(2) Then even if it was intended as a deed, the evidence shows that it was never delivered to plaintiffs. Where the donor and donee reside together at the time of the gift, the rule is that possession by the donee at the place of their residence is not sufficient to make the gift valid. *Overfield* v. *Sutton*, 1 Mat. (Ky.) 621; *Brink* v. *Gould*, 7 Lans. (N. Y.) 425; *Kelly* v. *Maness*, 31 S. E. (S. C.) 490.

Third. The decree entered by the chancellor below was contrary to law, and the court erred in entering final decree for plaintiffs. As to the forty acres in section 8 there was no description at all; neither on the tax receipt nor in the alleged deed as written by the scrivener; the scrivener, therefore, made no mistake in describing this land, and as to said forty acres there is nothing to reform.

The only competent proof in this case touching Mrs. Ford's action is that she showed or announced her intention to convey. No actual delivery, except such as was attempted to be shown by donee's possession under circumstances which the law above condemns, is shown by the testimony. Therefore, no title passed. *Nolen* et al. v. *Harden*, et al., 43 Ark. 307.

In this case the court says: "If there be only an intention to give and no delivery it will be inchoate and incomplete, however strong the expression of intention may be; and the property does not pass. One is bound by his acts, but without consideration, he is not bound to carry out his voluntary intentions, however firmly or earnestly he may express them."

In the above case, parenthetically, the court announced the following in reference to practice in the supreme court touching the facts in chancery causes: "In chancery causes the supreme court will, on appeal, sift the whole evidence and determine what findings of the chancellor should have been upon such of the evidence as was competent and proper; with due reference, however, to the decisions of the chancellor where the preponderance is nice."

To divest one's title by absolute gift requires a renunciation on the part of the donor and the acquisition on the part of the donee of all title, interest and dominion. *Brink* v. *Gould*, 43 Prac. 289; *Dickescheid* v. *Exchange Bank*, 28 W. Va. 340; *Yancey* v. *Field*, 8 S. E. (Va.) 721.

*Fontaine & Fontaine*, for appellant.

If the instrument is a deed instead of a will, our contention is that said alleged deed was never delivered during the lifetime of Mrs. Ford. Bartlett, the draftsman of the alleged deed was directed to hold and keep it until Mrs. Ford called for it, which he did for about two years, and until he was going to leave the state of Mississippi for Missouri, when he delivered the deed to Mrs. Ford without her calling for it. The next we hear of said alleged deed, it was in the hands of Emmett Richardson, son of appellees, after the death of Mrs. Ford, who was carrying it together with other papers to Esquire Johnson, as he said with reference to having it recorded. He also states that he saw the said alleged deed in the possession of his mother, Aggie Richardson, about two months before the death of Mrs. Ford. Appellees and Mrs. Ford lived

in the same house together. We submit that this is not sufficient proof of delivery of the deed. All the facts and circumstances in this case positively refute the idea of the delivery of the deed to appellees. It devolves upon appellees to prove delivery of the deed. The only proof of which is the testimony of Emmett Richardson, the weakness of which we invite your attention as same appears the in record.

There was no mistake in the deed to correct. The grounds for reforming an instrument was a mistake on the part of the draftsman in writing the numbers of the land in the deed. Bartlett, the draftsman says, he called upon Mrs. Ford for her deed to copy the numbers of the land from; she asked him if a tax receipt would not answer the purpose, he replied it would. Not having one with her he stated that he would call at her house in a day or two and get one, which he did and copied the numbers of the land from the receipt into the deed, making no mistake. Nor does the prooof show any mistake in the tax receipt given Bartlett by Mrs. Ford from which to get the numbers of the land. Nor will it be permitted to show any mistake in the tax receipt, or on the part of Mrs. Ford alone, because it would be the mistake of only one party, and could not be ground for reformation, as Equity will only reform an instrument on the ground of a mutual mistake, but never upon a mistake of one party alone. There could be no mutual mistake in this case, because there existed no contractual relations between the parties to this alleged deed, in fact the grantees, appellees herein, knew nothing about said alleged deed, or her intention to make one until, according to their own testimony, about a month or two before Mrs. Ford's death.

There has been no fraud charged in this case, no fraud proven and under the circumstances there could be no fraud, but simply the mistake of one party shown, or attempted to be shown. A mistake sufficient to justify the reformation of a contract must be the mistake of both

parties, and not that of one only.  4 Words & Phrases, 4540.  Cites *Dougherty* v. *Lyon Fire Insurance Co.*, 84 N, Y. Supp. 10; 41 Misc. Rep. 285; *Drachler* v. *Foote*, 84 N. Y. Supp. 977-979; 88 App. Div. 270.

There must always be shown the mistake of both parties, or the mistake of one with the fraudulent concealment of the other to justify a court of equity in reforming a contract.  1 Story's Equity Jurisprudence (10 Ed.) section 147.  A unilateral mistake is not a ground for reformation.  34 Cyc. 915.

The evidence falls far short of that required by law for the reformation of instruments, and there was no sufficient testimony to sustain the finding of the chancellor.  Reformation of an agreement sought by reason of an alleged mistake in drawing it up can only be had upon proof clear and free from doubt, and to the exclusion of every other reasonable hypothesis.  Wherefore it is respectfully submitted that said decree should be vacated, annulled and set aside, and that this cause be reversed and remanded.

*Spight & Spight*, for appellee.

The serious questions for consideration by the court are: 1st.  What land did Mrs. Ford own at the time of the execution of the deed to appellees?  2nd.  Did she intend to convey this land to the appellees?  3rd.  Was there a mistake inadvertently made in writing the deed?  4th.  Was the deed delivered and accepted by the grantees?  5th.  Do the pleadings and evidence make a proper case for reformation?

After a brief reference to the immaterial questions raised in the briefs of Mr. Murry, and Messrs. Fontaine & Fontaine, attorneys for appellants, we will discuss these five propositions in their order.  It is urged by counsel for appellants that the chancellor erred in remanding the case for further testimony when it was first submitted.

That this was a matter entirely in the discretion of the chancellor needs no argument.   The fact is that after the exclusion of the testimony of both the appellees on the motion of attorneys for appellants it was the duty of the court to remand the case for further development, and it makes no difference whether this was on the court's own motion or on the motion of counsel for the appellees. The criticism of the chancellor in the brief of Mr. Murry is uncalled for and unjust, and will certainly have no weight with this court.   This court will pay no attention to the attempt of counsel for appellants to connect the deed of Mrs. Ford to appellees with an alleged contract which was never signed by anyone, but seems from Bartlett's testimony to have been prepared by him "as a form" to be used in the event the parties should see proper to adopt this method, but which was never used. The chancellor correctly held that this "form" prepared by Bartlett, has nothing to do with the case. (See opinion of chancellor.)   Neither is there anything in the contention of counsel that the deed in controversy was of a testimentary character.   It is true that Mrs. Ford, both before and after the execution of the deed, did declare that she wanted her neice, Mrs. Richardson and her husband, to have all her property at her death, giving reasons therefor, but this was only in explanation as to why she intended and had actually executed the deed to them. It is also true that Mrs. Ford attempted to make some other form of conveyance which is not definitely described, but which Bartlett says, he wrote and submitted to Mr. Murry, an attorney at law, who advised against its execution, and that it was thereupon abandoned.   It is clearly brought out, however, in all of these attempts of Mrs. Ford to dispose of her property that she intended that appellee and no one else should have her property. These immaterial and irrelevant questions having been eliminated we are brought to a consideration of the real questions involved in this suit.

First, we have already shown that the only land owned by Mrs. Ford at the time of the execution of the deed to appellee was the land conveyed by the deed of W. C. Falkner to M. E. Sanders. Second, we have also shown that it was the clearly expressed intention of Mrs. Ford to convey this land to the appellees. Third, no matter what the testimony may show, it is certain that when Bartlett came to write the deed he unintentionally made a mistake in copying the numbers and description from the tax receipts which were handed to him. No tax receipt has been found showing that Mrs. Ford was ever assessed with, or paid taxes on the quarter section, or the half quarter, in section 10, as described in the deed which he wrote, nor is there the slightest indication that Mrs. Ford intended or attempted to mislead Bartlett in the preparation of the deed, but that in good faith she endeavored to convey the identical land described in the deed from Falkner to Sanders, and that it was not her fault that the land was not properly described, but that it was due to the carelessness of Bartlett alone. It is urged by counsel for appellants that because appellees were not present when this deed was made and no evidence of a previous contract of sale and purchase that the mistake is not mutual The mistake was mutual, to this extent at least, that when Mrs. Ford signed and acknowledged the deed and afterward delivered it to her niece, Mrs. Richardson, one of the appellees, both grantor and grantees understood that it was a conveyance of all of Mrs. Ford's land and it was accepted by the grantees with this understanding. There is involved in this question of mutuality also the question of consideration for the conveyance. The deed on its face expresses the consideration $300. The chancellor in his finding has reached the proper conclusion on this question, and properly says, "Leaving out Mrs. Richardson's testimony, which is excluded on defendant's (appellants) motion, there is no proof that the consideration was not paid. Mrs. Ford had the right to place an

estimate on the consideration which moved her, whether it was cash paid, services already rendered, or to be rendered. There was testimony to the effect that Mr. Richardson had helped Mrs. Ford in the past and that he would continue to do so." Whether any money was actually paid in cash, or not, it is clearly shown by the testimony that a part of the consideration, stated by Mrs. Ford, was care and attention to her in sickness, and continued service to be rendered her during the balance of her life. This constituted a meritorious and valuable consideration and made the mistake mutual and not unilateral, because both parties regarded the contract as a mutual one. It makes no difference that, as is shown by the testimony, the appellees were not urging their aunt to make this disposition of her property. Their conduct in this regard was highly commendable and cannot be used to defeat the purpose of the grantor in the deed.

The slightest consideration for the deed will relieve it of the charge of being voluntary. 34 Cyc. 929, sec. 5. This question of consideration was one of the disputed facts and the chancellor, sitting as a jury, has settled this. (See findings of chancellor.) The grantor in the deed, naming a consideration is estopped from denying that it was without consideration, and this applies to privies in title, 4 Ency. Ev. 191, 192, subsec. d. We now come to the consideration of the question as to the delivery and acceptance of the deed, and upon this point the only evidence in the record held by the chancellor to be competent was that of Emmett Richardson. This witness is assailed by counsel for appellant because he is the son of appellee. It is evident that this was an untrained witness, but there is nothing to show that he wasn't telling the truth. Whatever else may be said of his testimony it is perfectly clear that he saw the deed in his mother's possession more than once, and several months before Mrs. Ford's death. This fact, of itself, gives rise to important legal presumptions. "When a duly executed deed is found

in the possession of the grantee, the law presumes that it was delivered to him." 9 Am. & Eng. Ency. Law, p. 159; 4 Ency. Evidence, p. 158, 160, 250, 254, and note 32; *Morris* v. *Henderson*, 37 Miss. 492. "A delivery of a deed will be presumed from a slight circumstance where there is proof of an intention on the part of the grantor to . convey to the grantee." *Crabtree* v. *Crabtree*, 159 Ill. 342. "The intention of the grantor is an important factor on the question of delivery." 19 L. R. A. (O. S.) 242 and causes therein cited. The possession of a deed by the grantee is prima facie evidence of delivery when there is nothing to impeach the *bona fides* of his possession." *Strough* v. *Wilder*, 119 N. Y. 530; 7 L. R. A. (O. S.) 555. "The signing of a deed by the grantor and its possession by the grantee constituting *prima facie* evidence of delivery." *Devereaux* v. *McMahon*, 108 N. C. 134; *Blair* v. *Howell*, 68 Ia. 619. Intention is a test. *Gulf Red Cedar* v. *Ranshaw*, 169 Ala. 606; *Rickett* v. *Cowart*, 56 So. (Ala). 708; *Farr* v. *Chandler*, 57 So. (Ala.) —.

Counsel for appellants indicate that because the description of the forty acres would be void in a court of law that, therefore, it is not the subject of reformation in a court of equity. This court in the case of *Cummings* v. *Seele* 54 Miss. 647, is not in accord with this contention. Judge Campbell in delivering the opinion of the court in that case used this language: "This bill was demurred to on the ground that a court of chancery cannot reform a deed which contains a patent ambiguity in the description of the land intended and attempted to be conveyed. We are not aware of any such restriction on the power of the court. It is not a question of latent or patent ambiguity, but of fraud, accident or mistake in drawing the written evidence of the contract. If through fraud, mistake, or accident, the writing has not been made to speak the agreement of the contracting parties, it will be reformed to truly represent what the parties intended it should." As we have already shown, this forty acres of land was correctly and

properly described in some of the tax receipts which are made exhibits to the evidence of J. C. Fant, sheriff, and there can't be any question as to what land Mrs. Ford intended to convey by her deed. The deed describes it as being in the correct quarter-section, township and range, but refers to it only as forty acres "in the N. E. quarter." The description in the deed involved in *Cummings* v. *Seele supra,* was equally indefinite. It described the land as "130 acres off of the S. E. fourth Section 32, T. 10, Range 9." Judge Campbell said this was subject to reformation and there is no reason why the same principle should not apply in this case. We insist, therefore, that the chancery court was not in error in decreeing a correction in this regard as well as in the description of the other lands.

Reed, J., delivered the opinion of the court.

The purpose of this suit is to correct a description of land in a deed. The deed was made by Mrs. A. E. Ford conveying certain land therein described to the appellees for a consideration of three hundred dollars, which the deed recites was paid to Mrs. Ford by the appellees. The deed is a formal warranty conveyance, with the usual covenants, and is attested by two subscribing witnesses, and its execution proved in proper statutory form by the affidavit of one of the witnesses. The deed was not filed for record until after the death of Mrs. Fork, the grantor. This suit is brought by the appellees against the appellant, the only heir at law of Mrs. Ford. The chancellor granted the reformation of the deed and the quieting of the title to the land as prayed for by appellees in their bill.

It appears that the mistake in the description of the land occurred through the error of the scrivener in copying the description from a tax receipt. The erroneous description was not discovered until after Mrs. Ford's death.

It is certainly well settled in this state that a court of equity has power to reform a deed so that it will conform to the real intention of the party.   "The correction of mistakes in deeds or other writings is one of the acknowledged heads of equity jurisdiction."   *Peques* v. *Mosby,* 7 Smedes & M. 340.   It is stated in the case of *Miles* v. *Miles,* 84 Miss. 624, 37 So. 112, that "a court of equity will entertain a suit for the reformation of a deed when there is a material mistake in the description of lands intended. to be conveyed, so that more or less, or different, property is included than the parties, in fact, intended, and the inaccuracy of the description will be corrected."

It is shown in this case that Mrs. Ford had owned only the one tract of land which the bill alleges she intended to convey to the appellees, and that it was her purpose to deal with this land in the deed which she signed.   It is easy to understand that the writer of the deed, copying in a somewhat mechanical way the description of the land from a tax receipt, could easily make an error in description by writing down the wrong numbers in describing the portions of the sections intended to be conveyed.   It is proper by a decree of a court of equity to correct such a mistake.

Appellant contends that there was not a sufficient delivery of the deed by Mrs. Ford.   It is shown by the testimony of Mr. Bartlett, who wrote the deed, that Mrs. Ford intended it to be a warranty deed to the appellees. Another witness testifies that Mrs. Ford told him that she purposed to convey her land to Mrs. Richardson, one of the appellees, and, in fact, had done so.   Another witness testified that he saw the deed more than once in the possession of Mrs. Richardson several months before Mrs. Ford's death.

It was decided in the case of *Morris* v. *Henderson,* 37 Miss 492, that the possession by the grantee of an unrecorded deed and its production on the trial by him is presumptive evidence of delivery.   "When a deed is regularly executed, and is found in the hands of the grantee,

the presumption is that it has been duly delivered."
*Butrick* v. *Tilton*, 141 Mass. 93, 6 N. E. 563; *Carnes* v.
*Platt*, 41 N. Y. Super. Ct. 435. "When a party produces
a deed, duly executed and acknowledged, the possession
of it by the grantee, or by the party producing it, is
*prima facie* evidence of delivery." *Rhine* v. *Robinson*,
27 Pa. 30. There is no evidence in this case to meet the
presumption that there was a proper delivery of the deed.
In fact, there is evidence to justify the conclusion that the
deed was delivered by the grantor to the grantees.

Appellant also contends that this is not a proper case
for relief by a court of equity, because it is an effort to
reform a deed made without consideration, and which is
only a voluntary conveyance to the appellees. This con-
tention is not supported by the facts as shown in the
record. The deed itself plainly states that it is for the
consideration of three hundred dollars, which the grantor
says has been paid to her, and for which she duly acknowl-
edges receipt. There is nothing in the record to disprove
this clear statement in the deed. The principle which is
sought to be invoked, that a deed in favor of a volunteer
will not be reformed, will not apply in the present case.
There is sufficient consideration shown to empower the
court to make the proper reformation of the instrument in
order to carry out the intention of the parties. The deed
was executed and delivered by Mrs. Ford, and the appel-
lees received and accepted the same. This is an ordinary
case of conveyance of land between parties for a considera-
tion. We find in the record a written opinion by the
chancellor giving very clearly his findings. From this
it appears that he carefully considered the case, and our
review of it leads us to the conclusion that he was correct
in his decision.

Counsel for appellant very strongly contends that the
court erred in remanding the cause to rules for the further
taking of testimony, and continuing the case until the next
term of the court. The following is taken from the order

of the court remanding the cause to rules, and continuing it until the next term: "And the court not being satisfied that this matter should be finally disposed of on proof before the court, and that a fuller presentation of the complainants should be made, it is further ordered that said cause be remanded to rules, and same continued until the next term of the court in order that further evidence may be taken by both sides if desired." One of the counsel for appellant in claiming that this action of the chancellor was an abuse of his discretion states in his brief that the matter is called to the attention of this court for a twofold purpose: "(1st) To secure an announcement that will prevent trial courts in the future from volunteering, in litigated cases, to assist one or the other of interested parties. (2d) To show an insensible bias toward the plaintiffs herein which later probably dominated the judgment of the court in his findings." We strongly disapprove of the above statement by counsel. We do not find that the record of this case in any wise justifies counsel in his claim that the chancellor showed a bias toward appellees in the proceedings of the case. It was the duty of the chancellor to see that the case was fairly tried, and that all proper testimony was introduced to enable him to render a decision giving exact justice between the contending parties. The very purpose of a court of equity is to extend fairness in determining conflicting claims, and to give full and complete relief in every cause presented.

The chancellor is in no manner going beyond the duties imposed upon him when he so conducts a case that all testimony which will throw light upon the matters in controversy is introduced, and in his discretion he may continue the case, or remand the case for further proof. In the case of *Beard* v. *Green*, 51 Miss. 856, Chalmers, J., in delivering the opinion, stated: "The power of the chancery court to remand a cause for further proof at any time before final decree, and in some cases after it, either with

or without the consent of parties, is one of the marked characteristics distinguishing it from a court of law, and is one of its most salutary and beneficent powers. It should always be exercised where it is necessary to the ascertainment of the true merits of the controversy, and this is so, even where the necessity arises from the carelessness or the ignorance of litigants or counsel."

There are some who seem to consider a trial judge a mere figurehead. They are wrong. He is the presiding officer of the court. He should control all of the proceedings. He should require that the court be conducted in an orderly and dignified manner, with due formality. It is his highest duty to see that litigants have fair trials of their causes. To this end, it is not improper for him to aid in bringing out competent and relevant testimony. He should jealously guard the rights of all parties in a cause. It should be his continuous purpose to conduct the proceedings in a case so that justice to all may be done and a right decision reached. A judge, with full consciousness of the dignity and importance of his office and the obligations and duties resting upon him, and having an abiding desire to do what is right, will hardly abuse the powers and discretions lodged in him. And at all times, by reason of the honorable office he occupies, he should receive the courteous respect of every one.

*Affirmed*