Williams, et al. *v.* Edwards, et al.

No. 42509        February 4, 1963        149 So. 2d 326

*Jones & Stratton,* Brookhaven, for appellants.

*Roach & Jones,* McComb, for appellees.

KYLE, J.

This case is before us on appeal by Mae Brent Williams and her son, Harold E. Williams, complainants and cross-defendants in the court below, from a final decree of the Chancery Court of Lincoln County, rendered in favor of Gertrude Edwards and others, defendants and cross-complainants in the court below, wherein the court held that the defendants and cross-complainants had acquired title by adverse possession to a narrow strip of land containing approximately 0.63 of an acre off of the east side of the NW¼ of the NW¼ of Section 10, Township 6 North, Range 7 East, in Lincoln County, lying between a barbed wire fence, erected by the defendants and cross-complainants in the year 1960, and the east boundary line of the NW¼ of the NW¼ of said Section 10, as shown by the plat of a survey of said land made by H. E. Foster, civil engineer, and filed as a part of the record in this cause; and wherein the court held that the defendants and cross-complainants had acquired title by adverse possession to a narrow strip of land approximately 28 feet in width off of the east side of the SW¼ of the NW¼ of said Section 10,

extending southwardly from the northeast corner of the SW¼ of the NW¼ of said section a distance of 436 feet to an iron pin, and constituting a part of the lawn adjacent to the defendants' and cross-complainants' dwelling house.

The suit arose out of a boundary line dispute between close kindred. The appellant, Mrs. Mae Brent Williams, is an aunt by marriage of the appellees, and the appellant, Harold E. Williams, who is the son of Mrs. Mae Brent Williams, is a first cousin of the appellees. The record shows that the appellants are the owners of the record title to the E½ of the W½ of the NW¼ of Section 10, Township 6 North, Range 7 East, in Lincoln County, and that the appellees are the owners of the record title to the W½ of the E½ of the NW¼ of said Section 10, lying immediately east of and adjoining the land owned by the appellants.

The appellants filed their bill of complaint in this cause on September 14, 1960, and in their bill the appellants alleged that they were the owners of the E½ of the W½ of the NW¼ of the above mentioned Section 10, and that the appellees claimed title to the W½ of the E½ of the NW¼ of said section; that the appellees had erected a fence purporting to divide their land from the land owned by the appellants, but that in the construction of the fence, either mistakenly or wrongfully, the appellees had erected the fence on the land of the appellants. The appellants further alleged that the appellees had cut certain timber on the appellants' land and were asserting a claim of title or an interest in the E½ of the W½ of the NW¼ of said section, which cast doubt and suspicion upon the appellants' title and the appellants prayed that upon the final hearing a decree be entered cancelling and annulling any right, title, claim or interest asserted by the appellees in the E½ of the W½ of the NW¼ of said section, and requiring the appellees to remove their fence from the appellants'

land, and awarding damages to the appellants for the wrongful trespasses committed by the appellees, including the value of all timber cut and removed from the appellants' land.

The appellees filed an answer and cross bill in which they admitted that the appellants held the record title to the E½ of the W½ of the NW¼ of said section. The appellees alleged, however, that in the year 1932 a fence was built by the predecessors in title of the appellees purporting to divide the SW¼ of the NW¼ of Section 10 from the SE¼ of the NW¼ of said section; and that in 1938 fences were built by the predecessors in title of the appellants and by the predecessors in title of the appellees purporting to divide the NW¼ of the NW¼ from the NE¼ of the NW¼ of said section; that the appellees and their predecessors in title had been in the continuous adverse possession of all of the land lying immediately east of the fences mentioned above for a period of more than twenty years, claiming the same as their own, and had acquired title thereto by adverse possession. The appellees admitted in their answer that they had constructed or caused to be constructed a new barbed wire fence along the line between appellees' land and the appellants' land agreed upon by the appellants' predecessors in title and the appellees' predecessors in title, which line had been accepted as the dividing line between the two tracts of land for a period of more than twenty years prior to the filing of the bill of complaint in this cause.

The appellees denied that the appellants were entitled to have the appellees' claim of title to the strip of land in controversy removed as a cloud upon their title, and the appellees asked in their cross bill that their title be confirmed against the appellants as to all of the land in the W½ of the NW¼ of said Section 10 lying immediately east of the above mentioned fence.

The cause was heard at the December 1960 term of the court. A large number of witnesses were called to testify on behalf of the respective parties. No useful purpose would be served by our undertaking to summarize the testimony of each of the witnesses who testified concerning the acts of ownership relied on by the appellees to establish their claim of title by adverse possession to the narrow strips of land in controversy. It is necessary, however, that we give a brief summary of the testimony of the witness H. E. Foster, civil engineer, who was employed by the appellees after the suit was filed to make a survey of their land and establish on the ground the true boundary line between the E½ of the NW¼ and the W½ of the NW¼ of said Section 10.

Foster testified that he had made the survey as requested by the appellees during the month of October, and that he had made a plat of the survey which showed the true boundary line of the E½ of the W½ of the above mentioned quarter section, and also the exact location of the fences referred to in the pleadings. The plat was introduced in evidence. Foster testified that the new fence erected by the appellees along the west side of their property during the summer of 1960 followed the lines of an old fence which had fallen into decay; that the fence was located slightly west of the true boundary line between the E½ of the NW¼ and the W½ of the NW¼ of said section; that the fence erected by the appellees encroached upon the land owned by the appellants in the E½ of the NW¼ of the NW¼ of said section to the extent of 0.63 of an acre, and that the fence erected by the appellees encroached upon the land owned by the appellants in the E½ of the SW¼ of the NW¼ of said section to the extent of 0.74 of an acre, making a total encroachment on the land owned by the appellants in the two forties of 1.37 acres. Foster stated that the Edwards family residence was located

approximately 250 feet east of the true boundary line of the E½ of the NW¼ of said section 10; and that the lawn adjacent to the family dwelling house extended westwardly up to the barbed wire fence which the appellees had erected during the summer of 1960. It was also shown by other witnesses who testified on behalf of the appellee that the lawn adjacent to the family dwelling house had been maintained and kept mowed and occupied adversely by the appellees for a period of approximately 20 years prior to the filing of the bill of complaint in this cause.

At the conclusion of the hearing the chancellor took the case under advisement and rendered his opinion on December 30, 1960. The chancellor found that the line surveyed and established by the surveyor Foster was the true and correct boundary line between the E½ of the NW¼ and the W½ of the NW¼ of said Section 10. The chancellor also found that, for a period of thirty years or more the appellees had occupied and pastured and had kept enclosed the strip of land off of the east side of the NW¼ of the NW¼ of said Section 10 lying between the east boundary line of the appellants' E½ of the NW¼ of the NW¼ of said section, as run out and established by Foster, and the Edwards' fence erected in 1960; and the chancellor found that the appellees had acquired title by adverse possession to the strip of land thus described.

As to the "south forties" involved in the controversy, the chancellor found that both the appellants and the appellees had erected fences running north and south separating the two tracts of land, but not on the true and correct boundary line as shown by the Foster survey. The chancellor found that the appellees had failed to show that they had been in possession of all of the parcel of land claimed by the appellees in the E½ of the SW¼ of the NW¼ lying west of the line established by the Foster survey, occupying the same adversely under claim

of ownership, for the statutory period of ten years. The chancellor, however, found that the appellees had established and maintained since 1940 the well-kept lawn which extended westwardly from the Edwards' family dwelling house to points in close proximity to the Williams' fence; that the appellees had actually occupied adversely all of the lawn area, including that portion of same lying west of the line established by the Foster survey, if any, claiming it as their own, and had established title thereto by adverse possession for a period of more than twenty years.

After the chancellor had rendered his opinion, difficulty was encountered by counsel in the preparation of a decree designating the portion of the E½ of the SW¼ of the NW¼ of said Section 10 to which the appellees had acquired title by adverse possession; and a motion was filed by the appellees' attorneys to remand the cause to the docket for the purpose of hearing further proof as to the exact portion of the E½ of the SW¼ of said NW¼ which was included in the appellees' lawn. The chancellor thereupon signed an order on April 21, 1961, remanding the cause to the docket for the purpose of hearing further proof by all of the parties on the issue of whether or not any portion of the E½ of the SW¼ of the NW¼ of said Section 10 in fact constituted a portion of the appellees' lawn, and, if so, whether or not such portion had been adversely occupied by the appellees continuously for the statutory period. A further hearing was held on January 5, 1962, pursuant to the order dated April 21, 1961; and at that hearing, Foster, who had been requested by the appellees to go upon the land and ascertain by an additional survey whether any portion of the lawn extended over into the E½ of the SW¼ of the NW¼ of said section, and if so, the exact boundaries thereof, was again called to testify on behalf of the appellees. Foster testified that the additional survey had been made as requested, and that it had been

definitely ascertained that a strip of land approximately 28 feet in width and 436 feet in length, containing 0.30 of an acre, off of the east side of the SW¼ of the NW¼ of said Section 10, constituted a part of the appellees' lawn which extended westwardly from the Edwards' dwelling house to the Williams' fence. Foster identified and offered in evidence a plat of the additional survey which had been made by him and which contained a metes and bounds description of the 0.30-acre strip of land referred to above. Other witnesses testified on behalf of the respective parties on the issue as to whether the strip of land as thus described had been in the possession of the appellees and had been occupied exclusively and adversely by them for a period of more than ten years. The chancellor after hearing the testimony found that the 0.30 acre strip of land defined in Foster's supplemental plat constituted a portion of the appellees' lawn, and that the appellees had been in possession of the same for a period of more than twenty years and had acquired title thereto by adverse possession. A final decree was thereupon entered in conformity with the findings of the chancellor.

The appellants have assigned and argued three points as ground for reversal of the decree of the lower court: (1) That the court erred in its holding that the appellees had acquired title by adverse possession to the above mentioned 0.30 acre parcel of land; (2) that the court erred in its holding that the appellants were not entitled to have the fence erected by the appellees removed from the east boundary line of the SW¼ of the NW¼ of said Section 10; and (3) that the court erred in remanding the cause to the docket after both sides had rested and the chancellor had rendered his opinion on the merits of the case, so as to permit the appellees to present additional testimony to define specifically the area in said 40-acre tract possessed by them as a part of their lawn.

(Hn 1) We think there was no error in the chancellor's finding that the appellees had acquired title by adverse possession to the 0.30-acre strip of land lying along the east side of the SW¼ of the NW¼ of Section 10, or in the chancellor's holding that the appellants were not entitled to have the fence erected by the appellees removed from the east boundary line of the SW¼ of the NW¼ of said Section 10. We also think that there was no error in the court's action in sustaining the appellants' motion to remand the cause to the docket, after the rendition of the chancellor's opinion at the conclusion of the original hearing for the purpose of hearing further proof to be offered by the respective parties on the issue of whether or not any portion of the E½ of the SW¼ of the NW¼ of Section 10 did, in fact, constitute a portion of the lawn adversely occupied by the appellees continuously for a period of more than twenty years, and for the purposes of determining the boundaries of the area adversely occupied, if any.

The appellants concede that there was ample evidence in the record to support the chancellor's finding that the appellees had acquired title by adverse possession to the strip of land in the NW¼ of the NW¼ of said Section 10, lying east of the new fence erected by the appellees during the year 1960; and it is not contended that the court erred in that part of the decree.

(Hn 2) It is argued, however, that the burden of proof rested upon the appellees to show by competent evidence on the original hearing the area in the E½ of the SW¼ of the NW¼ of Section 10 actually occupied and claimed by them as a part of their lawn for the statutory period of ten years, and since the evidence offered on behalf of the appellees during the original hearing was not sufficient to .enable the court in its decree to define correctly the boundary lines of the strip of land along the east side of the SW¼ of the NW¼ of said section which was included within and constituted a part of the

appellees' lawn, the chancellor erred in permitting the appellees to reopen the case for the purpose of establishing the exact location of the strip of land included in the lawn.

But we think there was no error in the chancellor's action in remanding the cause to the docket for further proof to enable the court to enter a proper decree establishing the exact boundary lines of the strip of land in the above mentioned 40-acre tract shown to have been occupied by the appellees as a part of their lawn under claim of ownership for the statutory period.

In McAllister v. Richardson, 103 Miss. 418, 60 So. 570, the Court said: "It was the duty of the chancellor to see that the case was fairly tried, and that all proper testimony was introduced to enable him to render a decision giving exact justice between the contending parties. The very purpose of a court of equity is to extend fairness in determining conflicting claims, and to give full and complete relief in every cause presented. The chancellor is in no manner going beyond the duties imposed upon him when he so conducts a case that all testimony which will throw light upon the matters in controversy is introduced, and in his discretion he may continue the case or remand the case for further proof." See also Moore v. Sykes' Estate, 167 Miss. 212, 149 So. 789; Skrmetta v. Moore, 202 Miss. 585, 30 So. 2d 53.

In Griffith's Mississippi Chancery Practice, Second Edition, at Section 595, Page 631, it is said:

"In nearly every case, more especially if presented on both sides by solicitors of ability, the chancellor will be content to determine the cause on the record as made. But while this is usually true, it has long been the settled rule in our courts of equity that where on a final hearing or even after submission it is clearly perceived that some material point is either left unproved or the explanation of it is insufficient the chancellor has a discretion in the interest of justice and merits to remand it to the

docket for further proof. If it appear that by inadvertence or a mistaken idea of the law or the like, a material fact known to exist has not been proved, the court should remand to the docket to allow the proof, unless clearly a countervailing injustice would be done thereby."

We find no reversible error in the record and the decree of the lower court is affirmed.

Affirmed.

*McGehee, C. J., and Ethridge, Gillespie and Rodgers, JJ.,* concur.